# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

| | |
|---|---|
| HARVEY SULTZER, individually, and as representative of the ESTATE OF SANDRA SULTZER, </br></br>*Plaintiffs*, </br></br>v. </br></br>INTUITIVE SURGICAL, INC., </br></br>*Defendant.* | Civil Action No. 9:24-cv-80137-DMM |

**DEFENDANT INTUITIVE SURGICAL, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Defendant Intuitive Surgical, Inc. ("Intuitive") moves to dismiss in part Plaintiff's Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6).[1]

## INTRODUCTION AND BACKGROUND

Intuitive is a surgical device manufacturer. Doc. 26 ¶¶ 6, 9, 11. One of its products is the "multi-armed" *da Vinci* Xi Surgical System, a robotic surgical device that allows a surgeon to conduct minimally invasive surgery using a variety of instruments. *Id.* ¶ 9. Intuitive also designs, manufactures, and sells surgical instruments to be used with the *da Vinci* Surgical System, including "numerous electrosurgical instruments." *Id.* ¶ 6. This versatility enables surgeons to use instruments that best fit the patient's surgical needs. *See id.* ¶¶ 6, 9.

This product liability wrongful death case seeks to recover for injuries that decedent Sandra Sultzer ("Mrs. Sultzer") allegedly sustained during a robotically assisted surgery in September 2021. During that surgery, which sought "to address [Mrs. Sultzer's] colon cancer," *id.* ¶ 11, Mrs. Sultzer allegedly sustained a "thermal injury" (a burn) to her small intestine, which resulted in a perforation, *id.* ¶¶ 11, 24.[2] Mrs. Sultzer passed away several months later, in February 2022. *Id.* ¶ 27.

Plaintiff is on the third iteration of his Complaint, which contains many of the same infirmities Intuitive raised in its motion to dismiss Plaintiff's First Amended Complaint. *See* Doc. 18. Plaintiff now alleges that Mrs. Sultzer's injury was "caused by a defect in the insulation" of Intuitive's MCS instrument, Doc. 26 ¶ 28, which allegedly "emitted an 'electrical spark' causing

---

[1] Plaintiffs Harvey Sultzer and the Estate of Sandra Sultzer are referred to collectively as "Plaintiff." But the personal representative of the Estate of Sandra Sultzer is the only proper plaintiff here. *See infra* at 9–10.

[2] The facts alleged in Plaintiff's Complaint are taken as true for purposes of this motion only. *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 636 (2023).

1

a burn and perforation to her small intestine," *id.* ¶ 24.  The SAC asserts four claims: negligence (Count I); strict liability design defect (Count II); strict liability manufacturing defect (Count III); and strict liability failure to warn (Count IV).

Although Plaintiff will ultimately be unable to show that Intuitive's MCS instrument was defectively designed, Intuitive does not seek dismissal of that claim at this time.  But to streamline these proceedings, Plaintiff's other claims should be dismissed at the outset.  Those claims, as before, are inadequately pleaded or are not viable as a matter of settled law.

***First***, Plaintiff's negligent and strict liability failure to warn claims (Count I and Count IV) should be dismissed because federal law preempts them.  Plaintiff alleges that Intuitive failed to adequately warn Mrs. Sultzer's surgeon because it did not properly report adverse events to the FDA.  But under Eleventh Circuit precedent, failure to warn claims based on an alleged "failure to report adverse events" to the FDA are impliedly preempted by 21 U.S.C. § 337(a) of the Food, Drug, and Cosmetic Act ("FDCA"), which bars private enforcement of duties owed to the FDA. *See Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1329–30 (11th Cir. 2017).  And to the extent Plaintiff continues to assert a failure to warn claim based on allegedly inadequate warnings to Mrs. Sultzer, that claim is barred by the learned intermediary doctrine.

***Second***, Plaintiff's manufacturing defect claim (Count III) fails because Plaintiff does not allege any facts to suggest that the MCS instrument deviated from design or manufacturing specifications.

***Third***, Plaintiff's negligent manufacture and negligent failure to warn theories fail for the same reasons as his strict liability claims.  And Plaintiff's other theories (*e.g.*, negligent surveillance and negligent failure to provide training and information) are not independent grounds

for tort liability and, as a result, should be dismissed. The Court should thus dismiss Plaintiff's negligence claim except as it relates to an alleged negligently designed MCS instrument.

**Fourth**, Plaintiff still asserts impermissible claims and seeks impermissible relief. Plaintiff has no standing to bring any claims in his individual capacity. And there is no substantive basis for attorney's fees. The Court should dismiss these claims and requests for relief.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court accepts a plaintiff's well-pleaded allegations as true and makes reasonable inferences in his favor. *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020). But those "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the Court must disregard both "conclusory statements" and "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.     The SAC fails to state a claim to relief, other than for negligent and strict liability design defect.**

Intuitive does not seek dismissal of Plaintiff's claims for negligence and strict liability to the extent those claims are based on an alleged design defect in Intuitive's MCS instrument. But all other claims and theories should be dismissed for failure to state a claim.

3

### A. Plaintiff fails to plausibly allege any failure to warn claims (Counts I and IV).

Plaintiff asserts negligent and strict liability failure to warn claims based on Intuitive's alleged failure to report "adverse events to the FDA as required by federal law." Doc. 26 ¶ 31; *see also id.* ¶¶ 13, 20–22, 30–32, 37(a), 37(e), 65–67 (same or similar). But federal law preempts that claim, and the learned intermediary doctrine bars any other failure to warn theories that Plaintiff seeks to allege.

#### 1. Federal law impliedly preempts Plaintiff's failure to warn claim based on Intuitive's alleged failure to report adverse events to the FDA.

Plaintiff alleges that Intuitive did not properly report adverse events to the FDA and thus failed to adequately warn Mrs. Sultzer's surgeon about the risks of the MCS. Doc. 26, ¶¶ 65–69. But federal law preempts a state-law claim that is based on a medical device manufacturer's alleged failure to comply with its regulatory obligation to report adverse events to the FDA.[3]

Section 337(a) of the FDCA "requires that, with exceptions not relevant here, 'all such proceedings for the enforcement, or to restrain violations, of this chapter <u>shall be by and in the name of the United States</u>." *Mink*, 860 F.3d at 1327 (quoting 21 U.S.C. § 337(a)) (emphasis in original). Under this "'no-private-right-of-action' clause," *id.*, "a plaintiff cannot seek to privately enforce a duty that is owed to the FDA," *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1336 (11th Cir. 2022). A plaintiff cannot avoid this prohibition through artful pleading. Instead, federal law impliedly preempts traditional state-law tort claims that seek to privately enforce a duty owed to the FDA. *See Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001). In *Buckman*, for

---

[3] Federal preemption is an affirmative defense. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1234, 1240 (S.D. Fla. 2020) (citing *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 619 (2011)). "A 'complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.'" *Id.* at 1241 (citation omitted) (granting motion to dismiss based on preemption).

4

example, the Supreme Court held that § 337(a) impliedly preempted state law claims predicated on fraudulent representations to the FDA by a medical device manufacturer because (1) the claim "exist[ed] solely by virtue of the FDCA disclosure requirements" and (2) did not rely on "traditional state tort law [that] predated the federal enactments in question." *Id.* at 352–53.

Applying *Buckman*, the Eleventh Circuit has held that federal law preempts state-law claims that are based on a failure to report adverse events to the FDA. *Mink*, 860 F.3d at 1330–31. In *Mink*, the plaintiff alleged that the defendant "failed to adequately investigate adverse events and complaints and failed to properly report these issues to the FDA." *Id.* at 1330. But that claim was preempted, the court explained, because the "duty is owed to the FDA and [the plaintiff's] theory of liability is not one that state tort law has traditionally occupied." *Id.* Consistent with *Mink*, this Court has held that *Buckman* applies "not only where there is a separate fraud-on-the-FDA claim but also where a plaintiff seeks to prove fraud on the FDA in order to bring a traditional state-law torts suit." *In re Trasylol Prods. Liab. Litig.*, 763 F. Supp. 2d 1312, 1325 (S.D. Fla. 2010) (Middlebrooks, J.). Accordingly, "a state-law failure-to-warn claim that is based on a failure to provide information to the FDA is pre-empted." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1284, 1312–16 (S.D. Fla. 2021) (citing *Mink*, 860 F.3d at 1330).

That rule bars Plaintiff's failure to warn claim, which affirmatively and solely relies on Intuitive's alleged violation of federal adverse event reporting requirements. Plaintiff alleges that Intuitive "misrepresented . . . to the FDA . . . the unique risks associated with the da Vinci Xi Surgical System, including the Monopolar Curved Scissors" by "underreporting the frequency of injuries and deaths associated with [the MCS]." Doc. 26, ¶ 65. And he alleges that Mrs. Sultzer's surgeon would have been adequately warned "[i]f ISI had communicated adverse events to the FDA as required by federal law." Doc. 26 ¶¶ 31, 66. That theory is indistinguishable from the

5

claim that *Mink* held preempted—it alleges that "a manufacturer failed to tell the FDA those things required by federal law." *Mink*, 860 F.3d at 1330.

Federal law thus preempts this claim, and the Court should dismiss it with prejudice. *See In re Zantac*, 546 F. Supp. 3d at 1312–16.[4]

### 2. The learned intermediary doctrine otherwise bars Plaintiff's failure to warn claim.

To the extent Plaintiff asserts a claim that Mrs. Sultzer herself was inadequately warned, such a claim is barred by the learned intermediary doctrine.

Under Florida law, "[i]n cases involving medical devices," "the device manufacturer has a duty to warn 'the physician who prescribes the device.'" *Cates v. Zeltiq Aesthetics, Inc.*, 73 F.4th 1342, 1347 (11th Cir. 2023) (quoting *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021)). "The duty is owed, not to the consumer, but to the physician or medical professional because the medical professional is a 'learned intermediary.'" *Id.* "[T]he prescribing physician acts as an intermediary between the manufacturer and the consumer, weighing the potential benefits of a device against the dangers in deciding whether to recommend it to meet the patient's needs." *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1321 (11th Cir. 2017). Because of the learned intermediary doctrine, the question is "whether [a manufacturer's] warnings were legally

---

[4] *Accord, e.g.*, *Godelia v. Doe 1*, 881 F.3d 1309, 1320 (11th Cir. 2018) (explaining that the plaintiff's "claims would have been impliedly preempted if he were asking the court to find [the defendant] liable based solely on a failure to report to the FDA"); *Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777, 779 (11th Cir. 2018) (explaining that, in *Minks*, "a claim based on the defendant's failure to file a required report with the FDA was held to be preempted"); *Tsavaris v. Pfizer, Inc.*, 717 F. App'x 874, 877 (11th Cir. 2017) (recognizing *Minks* as holding preempted claims "premised on the alleged failure of a manufacturer of a hip joint replacement system to report adverse events involving its system to the Administration"); *Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288, 1295–96, 1300 (M.D. Fla. 2018) (holding that negligent and strict liability failure to warn claims based on the defendant's "failure to comply with its reporting obligations" were preempted).

6

adequate to warn the medical professionals" who use or prescribe the device. *Cates*, 73 F.4th at 1347–48.

Other than his preempted claim based on alleged FDA reporting requirements, Plaintiff does not allege—as he must—that Mrs. Sultzer's surgeon was inadequately warned. Instead, the SAC focuses on Mrs. Sultzer's alleged lack of knowledge. *See* Doc. 26 ¶¶ 29, 64 (alleging that "Mrs. Sultzer was not aware that the instruments to be used for the surgery had insulation problems""); *id.* (alleging that Mrs. Sultzer "was not aware" of allegedly "higher complication rates"); *id.* ¶¶ 31, 66 (alleging what "would have effectively warned Mrs. Sultzer"). But again, the duty to warn is "not [owed] to the consumer"; the relevant question is "whether [Intuitive's] warnings were legally adequate to warn" Mrs. Sultzer's surgeon as "the medical professional[ ]" who used and prescribed the device. *Cates*, 73 F.4th at 1347–48. Plaintiff's allegations about Mrs. Sultzer's receipt of and reliance on warnings do not address that question. *See*, *e.g.*, *Shapiro v. NuVasive, Inc.*, 2019 WL 5742159, at *2 (S.D. Fla. Nov. 5, 2019) (holding that manufacturer's duty to warn "runs to the physician, not directly to the patient" and dismissing failure to warn claim).

The Court should thus dismiss Plaintiff's failure to warn claim.

**B.  Plaintiff fails to plausibly allege a strict liability manufacturing defect claim (Count III).**

To state a strict liability claim for manufacturing defect, Plaintiff must plausibly allege that an Intuitive product "deviated from" its design and manufacturing specifications in a manner that rendered the product unreasonably dangerous. *Merino v. Ethicon Inc.*, 536 F. Supp. 3d 1271, 1283–84 (S.D. Fla. 2021). Manufacturing defect claims "are generally limited to situations where something goes wrong in the manufacturing process." *Salinero v. Johnson & Johnson*, 400 F. Supp. 3d 1334, 1344 (S.D. Fla. 2019) (quoting *Benitez v. Synthes, Inc.*, 199 F. Supp. 2d 1339, 1344

7

(M.D. Fla. 2002)).  Plaintiff has not plausibly alleged that the MCS (or the *da Vinci* Xi Surgical System more generally) was defectively manufactured.

Plaintiff's manufacturing defect claim is little more than conclusory allegations entitled to no weight, *Iqbal*, 556 U.S. at 678, and that are not even relevant, (Doc. 26 ¶ 54 (alleging that Intuitive manufactured "the da Vinci Xi Surgical System, including the Monopolar Curved Scissors, that was ***defective in design***" (emphasis added)).  "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to survive a Rule 12(b)(6) motion."  *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678).  But more fundamentally, the SAC does not explain how the MCS "deviated from manufacturing specifications."  *Merino*, 536 F. Supp. 3d at 1283.  Under Florida law, that is fatal.  *See, e.g.*, *Merino*, 536 F. Supp. 3d at 1283–84 (dismissing claim because "Plaintiff does not plead any facts pertaining to a manufacturing defect"); *Kuchenbecker v. Johnson & Johnson*, 2019 WL 4416079, at *2 (S.D. Fla. Sept. 16, 2019) (dismissing claim because the plaintiffs failed to allege "how the device implanted in the Plaintiff deviated from manufacturing specifications").

### C.    Plaintiff's negligence claim (Count I) is based on numerous inadequately pleaded or non-viable theories.

Intuitive does not seek to dismiss Plaintiff's negligence claim to the extent it alleges that the MCS was negligently designed, but Plaintiff's other negligence theories should be dismissed (Count I).

First, Plaintiff's negligent manufacture theory, (Doc. 26 ¶ 37(a)–(b)), fails for lack of any plausible allegation that any product deviated from design and manufacturing specifications.  *See Merino*, 536 F. Supp. 3d at 1283–84; *Dillon v. Sunbelt Rentals, Inc.*, 2020 WL 13600450, at *3 (S.D. Fla. Aug. 30, 2020) (explaining that a plaintiff "must establish that the product was defective or unreasonably dangerous").  (*See supra* at 7–8).

8

Second, Plaintiff's failure to warn theory, (Doc. 26 ¶ 37(a), (e)), is either preempted by federal law or barred by the learned intermediary doctrine. *Mink*, 860 F.3d at 1329–30 (holding negligent failure to warn claim based on failure to report adverse events was preempted); *Dillon*, 2020 WL 13600450, at *3 (explaining that failure to prove "an inadequate warning" is "fatal to a products liability negligence claim"). (*See supra* at 4–7).

Third, Plaintiff's other theories are not proper bases for recovery. Plaintiff's theory that Intuitive negligently "conduct[ed] . . . intra-operative surveillance and post-operative complication studies," (Doc. 26 ¶ 37(d)), is subsumed by the negligent design and negligent failure to warn theories. *See Shapiro*, 2019 WL 5742159, at *2. And his theory that Intuitive failed to "provide adequate training and information to healthcare providers," (Doc. 26 ¶ 37(e)), is barred by the learned intermediary doctrine. *See Mink*, 860 F.3d at 1329–30 (holding that district court properly dismissed "negligence claim to the extent it was premised on an improper training theory"); *Rounds v. Genzyme Corp.*, 440 F. App'x 753, 756 (11th Cir. 2011) (same). Those theories should therefore be dismissed.

**II.     The SAC asserts impermissible claims and seeks impermissible forms of relief.**

The Court should also dismiss Plaintiff's claims that seek impermissible forms of relief.

Plaintiff seeks to assert claims in his individual capacity, which—as Intuitive previously explained in its Motion to Dismiss Plaintiff's First Amended Complaint—is impermissible in this statutory wrongful death case. *See* Doc. 18, at 18–19. Florida's Wrongful Death Act, §§ 768.16–.26, Fla. Stat., prevents Mr. Sultzer from asserting any claims in his individual capacity. The SAC alleges that Mrs. Sultzer died from injuries sustained during her September 2021 surgery. (Doc. 26 ¶¶ 3, 27). Under the Act, "any personal injury claims alleging wrongdoing that ultimately resulted in the death of the decedent are extinguished upon death, leaving the statutory wrongful death claim as the only avenue for damages against the tortfeasor." *Mucciolo v. Boca Raton Reg'l*

9

*Hosp., Inc.*, 824 F. App'x 639, 643–44 (11th Cir. 2020) (citing § 768.20, Fla. Stat., and explaining that a statutory wrongful death claim is the "only avenue for damages"). Because "the personal representative of a decedent's estate is the only party with standing to institute a wrongful death lawsuit," *id.* at 643,[5] Mr. Sultzer lacks standing to bring any individual capacity claims seeking to recover monetary damages based on injuries to Mrs. Sultzer.[6]

Plaintiff also seeks an award of attorney's fees. Doc. 26 at 13. As Intuitive previously explained, "[a]ttorney fees may be awarded by a court only when authorized by statute or by agreement of the parties." Doc. 18 at 19 (quoting *Greer v. Ivey*, 2015 WL 13740686, at *11 (M.D. Fla. Dec. 16, 2015)); *accord Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1148–49 (Fla. 1985). There is no basis in Florida law, or any contract between the parties, to award attorney's fees in this product liability wrongful death case. Plaintiff's requests for attorney's fees should be dismissed with prejudice. *Brown v. Seebach*, 763 F. Supp. 574, 583 (S.D. Fla. 1991) (striking request in wrongful-death suit because "[n]o Florida statute provides for the recovery of attorney's fees in this situation").

### III. These claims should be dismissed with prejudice.

Finally, the Court should dismiss with prejudice each of these claims because Plaintiff has had the chance to fix these pleading deficiencies but has not done so. When it moved to dismiss Plaintiff's First Amended Complaint, Intuitive explained (1) that Plaintiff had not alleged how the

---

[5] "The [wrongful death] action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death." § 768.20, Fla. Stat.

[6] In addition, Mr. Sultzer asserts claims in his individual capacity for negligence and strict liability based on injuries to Mrs. Sultzer. Those claims fail for lack of any cognizable injury to Mr. Sultzer himself. *See, e.g., Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1162 (S.D. Fla. 2009) (explaining that an element of negligence and strict liability is injury to "the plaintiff").

product deviated from manufacturing specifications, *see* Doc. 18 at 13 n.9; (2) that the learned intermediary doctrine barred Plaintiff's failure to warn claim as pleaded, *id.* at 13–14; (3) that Plaintiff's negligence claims were inadequately pleaded or subsumed, *id.* at 16–17 & n.12; and (4) that Plaintiff asserted impermissible claims and sought impermissible forms of relief, *id.* at 18–20. These deficiencies still exist. Because Plaintiff already has had "the chance to cure th[e]s[e] deficienc[ies], and Plaintiff has failed to do so," these claims should "now be dismissed with prejudice." *Mendez v. Prieto*, 2019 WL 13261672, at *2 (S.D. Fla. Sept. 16, 2019).

## CONCLUSION

For these reasons, the Court should dismiss with prejudice Plaintiff's claims against Intuitive under Rule 12(b)(6), except to the extent Plaintiff asserts negligent design and strict liability design defect claims limited to Intuitive's MCS instrument.

Dated: April 8, 2024

Respectfully submitted,

/s/ *Spencer Silverglate*
CLARKE SILVERGLATE, P.A.
Spencer Silverglate (No. 769223)
Stephanie Simm (No. 015486)
Raul Alvarez (No. 1025071)
5301 Blue Lagoon Drive, 9th Floor
Miami, FL 33126
Phone: 305-377-1557
Facsimile: 305-377-3001
ssilverglate@cspalaw.com
ssimm@cspalaw.com
ralvarez@cspalaw.com

BRADLEY ARANT BOULT CUMMINGS LLP
Fred M. ("Tripp") Haston, III (*pro hac vice*)
Stanley E. Blackmon (*pro hac vice*)
1819 Fifth Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Facsimile: (205) 521-8800
thaston@bradley.com
sblackmon@bradley.com

*Counsel for Defendant Intuitive Surgical, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2024, the foregoing was served, via the Court's CM/ECF Document Filing System, upon all registered CM/ECF users in this action.

/s/ *Spencer Silverglate*
Spencer Silverglate