THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| HARVEY SULTZER AS REPRESENTATIVE OF THE ESTATE OF SANDRA SULTZER AND INDIVIDUALLY,<br><br>                        Plaintiff,<br><br>      v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>                        Defendant. | Civil Case No. 9:24-cv-80137-DMM |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

 

**SEARCY DENNEY SCAROLA BARN-
HART & SHIPLEY, PA**
JOHN SCAROLA
2139 Palm Beach Lakes Blvd
West Palm Beach, FL 33409
561-686-6300 Telephone
561-383-9451 Fax
scarolateam@searcylaw.com

--and—

**SULTZER & LIPARI, PLLC**
Joseph Lipari
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
(845) 483-7100
liparij@thesultzerlawgroup.com

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

Table of Contents………………………………………………………………………………..i

Table of Authorities…………………………………………………………………………ii-iii

   INTRODUCTION……………………………………………………………………...1

   FACTUAL BACKGROUND…………………………………………………………..3

   STANDARD OF REVIEW…………………………………………………………….5

   ARGUMENT…………………………………………………………………………...6

      I.     Plaintiff's Manufacturing Defect Claim is Sufficiently Pled………………………….6

      II.    Plaintiff's Failure to Warn Claim is Not Preempted and is Not Precluded
           by the Learned Intermediary Doctrine……………………………………….…8

      III.   There is no Basis to Dismiss Plaintiff's Claims With Prejudice…………………….10

      IV.   Plaintiff's Request for Punitive Damages is Viable…………………………………11

CONCLUSION………………………………………………………………………...……11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alfeo v. I-Flow*,
   LLC, No. 11-80837-CIV, 2012 U.S. Dist. LEXIS 16798, 2012 WL 442981
   (S.D. Fla. Feb. 10, 2012)...............................................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................................5

*Bailey v. Janssen Pharmaceutica, Inc.*,
   288 F. App'x 597 (11th Cir. 2008) ................................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................................5

*Bloom v. Alvereze*,
   498 F. App'x 867 (11th Cir. 2012) ..................................................................................................10

*Dillon v. Sunbelt Rentals, Inc.*,
   2020 WL 13600450 (S.D. Fla. Aug. 30, 2020)................................................................................7

*Dye v. Covidien LP*,
   470 F. Supp. 3d 1329 (S.D. Fla. 2020) ........................................................................................7, 8

*Ferayorni v. Hyundai Motor Co.*,
   711 So.2d 1167 (Fla. 4th DCA 1998) ..............................................................................................8

*Hicks v. Bombardier Rec. Prods.*,
   No. 22-CV-61176-RAR, 2023 U.S. Dist. LEXIS 129432 (S.D. Fla. July 26,
   2023) ................................................................................................................................................7

*Holmes v. Bridgestone/Firestone, Inc.*,
   891 So.2d 1188 (Fla. 4th DCA 2005) ............................................................................................11

*Jackson v. Birmingham Bd. of Educ.*,
   309 F.3d 1333 (11th Cir. 2002) ........................................................................................................5

*Jennings v. BIC Corp.*,
   181 F.3d 1250 (11th Cir. 1999) ........................................................................................................6

*Marzullo v. Crosman Corp.*,
   289 F. Supp. 2d 1337 (M.D. Fla. 2003) ..........................................................................................8

*Mendez v. Prieto*,
   2019 U.S. Dist. LEXIS 159144 (S.D. Fla. Sept. 16, 2019) ...................................................... 10

*Merino v. Ethicon Inc.*,
   536 F. Supp. 3d 1271 (S.D. Fla. 2021) ....................................................................................... 6

*Patt v. Volkswagen Grp. of Am., Inc.*,
   No. 22-cv-21585, 2022 U.S. Dist. LEXIS 162647 (S.D. Fla. Sep. 8, 2022) .............................. 6

*Thelen v. Somatics, LLC*,
   672 F. Supp. 3d 1216 (M.D. Fla. 2023) ..................................................................................... 9

**Statutes**

FDCA .................................................................................................................................................. 8

Fla. Stat. Section 768.72(2)(b) ......................................................................................................... 11

Food Drug and Cosmetics Act ................................................................................................. 2, 3, 4, 5

Rule 12(b)(6) ...................................................................................................................................... 5

## INTRODUCTION

Plaintiff Harvey Sultzer, as representative of the Estate of Sandra Sultzer[1] ("Plaintiff") respectfully submits this memorandum in opposition to the motion to dismiss ("Motion," ECF No. 28) filed by Defendant Intuitive Surgical, Inc. ("Intuitive" or "Defendant") seeking dismissal of Plaintiff's Second Amended Complaint ("SAC," ECF No. 26).

In this action, Plaintiff is acting on behalf of the Estate of Sandra Sultzer (hereinafter "Mrs. Sultzer") who was grievously injured and died as a result of complications she suffered while being operated upon with a surgical instrument designed and manufactured by Defendant known as the da Vinci Surgical System Xi with Monopolar Curved Scissors ("MCS"). During surgery, Mrs. Sultzer suffered a thermal injury to her small intestine, caused by the MCS. Plaintiff alleges that Defendant should be held responsible for its failure to properly design and manufacture the MCS in addition to its failure to adequately warn Mrs. Sultzer's surgeon of the severe risk that the MCS might emit an electrical spark capable of causing severe burns to a patient's internal organs. Plaintiff asserts claims against Defendant for negligence as well as strict liability claims based on design defect, manufacturing defect and failure to warn theories.

Defendant now moves to dismiss the SAC in part. Defendant does not seek dismissal of Plaintiff's strict liability design defect claim (Count II) or the portion of Plaintiff's negligence claim based on design defect (Count I). Accordingly, this case will be moving forward into discovery regardless of how the Court decides this Motion.

Defendant contends that Plaintiff's manufacturing defect claim should be dismissed because Plaintiff has not explained how Defendant deviated from manufacturing specifications in manufacturing the MCS. However, pursuant to Eleventh Circuit precedent, a plaintiff is not

---

[1] Plaintiff withdraws any attempt to assert claims individually.

1

required to plead exactly how a product came to be defective – whether that be through its design or manufacture.  At this stage of the case, Plaintiff's allegations sufficiently place Defendant on notice of the defect at issue, which is that the MCS tends to emit dangerous electric sparks which can cause thermal burns.  Plaintiff has also clearly delineated the claims being asserted.  This is all that is needed based on prevailing law.

Defendant also seeks dismissal of Plaintiff's failure to warn claim.  Defendant maintains that Plaintiff's claim is based solely on its own duties to report adverse events to the FDA.  As such, Defendant argues that Plaintiff's claim is preempted by the Food Drug and Cosmetics Act ("FDCA").  Defendant also claims that it had no duty to warn Mrs. Sultzer of risks inherent to the MCS due to the learned intermediary doctrine.  Both of these arguments are unavailing since Plaintiff's claim is plainly based on Defendant's failure to provide adequate warnings to Mrs. Sultzer's surgeon.

As part of its Motion, Defendant asks that any resulting dismissals be "with prejudice." Plaintiff contends that dismissal with prejudice would be inappropriate at this juncture, as Plaintiff has not had the benefit of any decision from the Court identifying deficiencies in his pleadings. Based on governing case law, should any of Plaintiff's claims be dismissed, that dismissal should, therefore, be without prejudice.

Defendant also seeks to dismiss Plaintiff's claim for punitive damages.  Yet Plaintiff's allegations support the conclusion that Defendant had actual knowledge of the defects in its MCS device and failed to provide adequate warnings.  This is sufficient to state a claim for punitive damages under Florida law.

For these reasons and those detailed herein, Defendant's Motion must be denied.[2]

---

[2] Defendant also seeks dismissal of Plaintiff's claim for attorney's fees.  Plaintiff hereby withdraws that damages claim.

**FACTUAL BACKGROUND**

Mrs. Sultzer was diagnosed with colon cancer in June 2021. SAC at ¶ 10. Mrs. Sultzer was admitted to Baptist Health Boca Raton Regional Hospital on September 14, 2021, for surgery designed to treat her colon cancer. SAC at ¶ 23. Dr. Avraham Belizon performed the surgery using the MCS manufactured by Defendant. *Id*.

During the surgery, Mrs. Sultzer experienced thermal injury to the small intestine, resulting in a perforation. SAC at ¶ 24. Following the surgery, Plaintiff Harvey Sultzer was informed that Mrs. Sultzer's cancer had not metastasized and had been removed. *Id.* However, physicians at the hospital, including Dr. Belizon, also informed Mr. Sultzer that the robot used during Mrs. Sultzer's Surgery had emitted an "electrical spark" causing a burn and perforation to her small intestine. *Id*.

Following the surgery, Mrs. Sultzer had a feeding tube inserted and was eventually transferred to a rehabilitation facility. SAC at ¶ 25. Mrs. Sultzer underwent numerous medical procedures, including a procedure to close (with approximately 15 sutures) the perforation, because of her thermal injury. *Id*. She continued to have abdominal pain and suffer severe physical and mental distress. *Id*. For the large majority of her life following the surgery, Mrs. Sultzer was confined to the hospital and/or a rehabilitation facility, and she was never able to eat solid foods again. *Id*.

The injury suffered by Mrs. Sultzer caused her pain and emotional distress. SAC at ¶ 26. Plaintiff and Mrs. Sultzer incurred the expense of medical care, hospitalization, treatment, nursing care and treatment, and the expense of rehabilitative care and treatment. *Id*. Mrs. Sultzer ultimately died in February of 2022 as a direct and proximate result of the injuries she suffered during the September 2021 da Vinci surgery. SAC at ¶ 27.

Mrs. Sultzer's death was the result of the thermal injury caused by a defect in the insulation of the MCS device. SAC at ¶ 28. Prior to consenting to the da Vinci surgery, Mrs. Sultzer was

not aware that the instruments to be used for the surgery had insulation problems that made them more prone to causing unintended burns than traditional laparoscopic instruments. SAC at ¶ 29. She was not aware that the da Vinci surgery would subject her to higher complication rates with no demonstrated benefit in outcome. *Id*.

The reason Mrs. Sultzer was unaware of these risks is because Defendant failed to warn Mrs. Sultzer's healthcare providers, including her surgeon, of the dangers associated with the da Vinci Xi Surgical Systems, and specifically the danger of arcing and thermal burns associated with the MCS. SAC at ¶ 29. Had Mrs. Sultzer's surgeon been warned of the true frequency of the occurrence of injury and death associated with the da Vinci Vi Surgical System such that he could warn Plaintiff and Mrs. Sultzer, Mrs. Sultzer would not have agreed to undergo surgery using the da Vinci robot. SAC at ¶ 33.

Yet, ample evidence exists to demonstrate that Defendant was well aware of the issues with its MCS device and failed to make healthcare providers like Mrs. Sultzer's surgeon aware of them. According to SEC filings, Defendant was named as a defendant in "approximately 93 individual product liability lawsuits filed in various state and federal courts by plaintiffs who allege that they or a family member underwent surgical procedures that utilized the da Vinci Surgical System and sustained a variety of personal injuries and, in some cases, death as a result of such surgery." SAC at ¶ 12. Defendant has also received thousands of injury and defect reports related to da Vinci surgeries. SAC at ¶ 13. The most dangerous injuries arose from burns to internal organs caused by the discharge of electricity, caused by the robot's instruments inside the patient. *Id*.

Moreover, literature available to Defendant prior to Mrs. Sultzer's surgery showed that the insulation ISI used on the da Vinci robots electrosurgical instruments was insufficient to reliably prevent electricity from leaking into the body and causing internal burns to patients. SAC at ¶ 15.

This was documented in the journal Urology on September 16, 2010; in the American Journal of Obstetrics and Gynecology in August 2011 (noting 80% insulation failures after 10 uses, 32% of instruments suffered insulation failure before 10 uses) – though ISI tells hospitals that its instruments will be safe for the first 10 procedures; and in the Journal of Endourology in September 2011 (under sparking conditions, "thermal injury to tissue is instantaneous, inevitable, and severe." Such electrosurgical injuries "are likely to be both under- recognized and underreported."). *Id*.

Plaintiff, acting on behalf of Mrs. Sultzer's estate, commenced the instant action seeking to hold Defendant responsible for Mrs. Sultzer's injuries and ultimately, her death. In the operative SAC, Plaintiff sets forth causes of action for negligence, design defect, manufacturing defect and failure to warn. Defendant now moves to dismiss Plaintiff's SAC.

## **STANDARD OF REVIEW**

A court should grant a motion to dismiss only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1335 (11th Cir. 2002). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

## ARGUMENT

### I. Plaintiff's Manufacturing Defect Claim is Sufficiently Pled

Counts I and III of the SAC concern Defendant's manufacture of the MCS. Count I alleges that the MCS was manufactured negligently and Count III seeks to hold Defendant liable under a strict liability theory. Under Florida law, "the manufacturer of a defective product can be held liable if the manufacturer made the product in question, if the product has a defect that renders it unreasonably dangerous, and if the unreasonably dangerous condition is the proximate cause of the plaintiff's injury." *Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999). Defendant seeks dismissal of Plaintiff's manufacturing defect claim on the basis that "the SAC does not explain how the MCS 'deviated from manufacturing specifications." Motion at pg. 8 (citing *Merino v. Ethicon Inc.*, 536 F. Supp. 3d 1271, 1283 (S.D. Fla. 2021)). However, a plaintiff "is not required to plead with more specificity the exact manufacturing defect that caused the [device in question to malfunction." *Patt v. Volkswagen Grp. of Am., Inc.*, No. 22-cv-21585, 2022 U.S. Dist. LEXIS 162647, at *7 (S.D. Fla. Sep. 8, 2022). Defendant's argument to the contrary ignores the Eleventh Circuit's decision in *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 605-06 (11th Cir. 2008).

"[T]he Eleventh Circuit clarified in *Bailey* that a plaintiff is not required to specify where in the manufacturing process the defect was introduced." *Patt*, 2022 U.S. LEXIS 162647 at *8. This is because the *Bailey* Court recognized that "it is difficult for a plaintiff at this stage in the litigation to know the source of the defect that was responsible for the harm caused: whether there was a surprising manufacturing problem, a systemic issue with a product in its design, or a failure on the part of the manufacturer to warn doctors that particular uses might pose an unreasonable risk of harm." *Bailey*, 288 F. App'x at 605-06. The Court noted that "after discovery

6

appellant will have an opportunity to better identify whether the purported defect at issue was a result of design or manufacturing error or both." *Id*. at 610. Accordingly, the Court determined that all that is required to state a manufacturing defect claim at the pleading stage is to identify the defect and to put the Defendant on notice of the claim being asserted:

> In short, appellant identified the source of the defect: a leak in the protective lining and functional layers, which caused the product to dispense its medication at a dangerous and lethal rate. Whether this leak was the result of a manufacturing error along the assembly line or because of a faulty design in the patch itself would be difficult for a consumer to know prior to discovery. But these allegations are sufficient to allow defendants to frame a responsive pleading directed at a defect in either the design or manufacturing of the patch's layers that caused a leak resulting in the delivery of a fatal dose of fentanyl.

*Id*. at 607-08.

Here, Plaintiff identifies specific defects in the MCS (SAC ¶¶ 15-19) and sets forth distinct claims against Defendant putting it on notice as to the theories of liability he is pursuing (SAC ¶¶ 35-70). That is all that is required at this stage of the case. *See Dye v. Covidien LP*, 470 F. Supp. 3d 1329, 1338 (S.D. Fla. 2020) (denying a motion to dismiss where the plaintiff "has sufficiently alleged several defects with the Product"); *Hicks v. Bombardier Rec. Prods.*, No. 22-CV-61176-RAR, 2023 U.S. Dist. LEXIS 129432, at *35 (S.D. Fla. July 26, 2023) (denying motion to dismiss where plaintiffs identified a specific defect and "separate their manufacturing and design defect claims into separate counts, putting Defendants on notice as to what theories of liability Plaintiffs are pursuing").

In seeking dismissal of the negligent manufacturing claim, Defendant relies upon the same arguments but also cites to *Dillon v. Sunbelt Rentals, Inc*., 2020 WL 13600450, at *3 (S.D. Fla. Aug. 30, 2020), for the proposition that a plaintiff "must establish that the product was defective or unreasonably dangerous." Motion at pg. 8. This decision is inapposite as it was decided at the

7

summary judgment phase, where a completely different standard applies. At this stage, "Plaintiff does not need to prove his claims, he must only plead enough factual allegations to plausibly state a claim and provide Defendant notice of which claims he intends to pursue." *Dye*, 470 F. Supp. 3d at 1337-38.

### II. Plaintiff's Failure to Warn Claim is Not Preempted and is Not Precluded by the Learned Intermediary Doctrine.

Defendant seeks dismissal of Plaintiff's negligence and strict-liability based failure to warn claims (*see* Count I and IV). According to Defendant, these claims are impliedly preempted by the FDCA and barred by the learned intermediary doctrine. Both of these arguments are incorrect.

"To establish strict liability failure to warn, a plaintiff must prove that the defendant is a manufacturer or distributor of the product at issue and that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." *Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1347 (M.D. Fla. 2003) (citing *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1172 (Fla. 4th DCA 1998). "The difference between negligent failure to warn and failure to warn under a strict liability theory is that 'a prima facie case of strict liability failure to warn does not require a showing of negligence.'" *Id*.

Plaintiff sets forth valid failure to warn claims under both the negligence and strict liability theory. Plaintiff alleges that Defendant is the manufacturer of the MCS device and that Defendant failed to adequately warn of the defect in the MCS device in that it "affirmatively misrepresented both to the FDA and to the medical community, including plaintiff's doctor the unique risks associated with the da Vinci Xi Surgical System" by "underreporting the frequency of injuries and deaths associated with da Vinci robots." SAC at ¶ 30.

Defendant contends that Plaintiff's claims are preempted because they "solely rel[y] on Intuitive's alleged violation of federal adverse event reporting requirements." Motion at pg. 5. This argument misrepresents the nature of Plaintiff's allegations. Though Plaintiff makes reference to Defendant's failure to report adverse events to the FDA, a plain review of the SAC shows that the crux of the claim is that Defendant failed to adequately warn doctors such as Mrs. Sultzer's surgeon, who "relied on ISI's underreporting adverse incidents associated with the da Vinci Vi Surgical System." SAC at ¶ 32.

The fact that some paragraphs of the SAC refer to Defendant's duties to the FDA (for purposes of providing context) does not warrant dismissal of the failure to warn claims. For example, in *Thelen v. Somatics, LLC*, 672 F. Supp. 3d 1216, 1225 (M.D. Fla. 2023), Somatics alleged that certain allegations in the plaintiff's pleading were impliedly preempted on the same bases raised by Defendant here. In assessing allegations in question, the Court noted that "[s]ome of these rely on duties running solely to the FDA, while others do not." *Id*. Rather than dismissing the challenged allegations *en masse*, the Court evaluated each individually. That is exactly what should be done here. The allegation that Defendants failed to adequately warn Mrs. Sultzer's surgeon is distinct from any duty Defendant owed to the FDA. Thus, Plaintiffs' claims are not preempted.

Because these claims are based on a failure to warn Mrs. Sultzer's surgeon (as opposed to a failure to warn Mrs. Sultzer directly), the learned intermediary doctrine is not applicable. For reasons unknown, Defendant asserts that "Plaintiff does not allege—as he must—that Mrs. Sultzer's surgeon was inadequately warned." Motion at pg. 7. This is plainly false as plaintiff unequivocally states that Defendant "failed to warn Mrs. Sultzer's healthcare providers, including her surgeon, of the dangers associated with the da Vinci Xi Surgical Systems, and specifically the

9

danger of arcing and thermal burns associated with the Monopolar Curved Scissors." SAC at ¶ 19. At this stage of the case, these allegations are sufficient to defeat a motion to dismiss.

### III. There is no Basis to Dismiss Plaintiff's Claims With Prejudice

Defendant also asks that Plaintiff's claims be dismissed with prejudice "because Plaintiff has had the chance to fix these pleading deficiencies but has not done so." Motion at pg. 10. This request does not comport with the current state of the law in the Eleventh Circuit. It has been held that "[a]fter a district court grants an opportunity to amend and *identifies the pleading's deficiencies*, if the plaintiff fails to submit a proper pleading, dismissal with prejudice is appropriate." *Bloom v. Alvereze*, 498 F. App'x 867, 884 (11th Cir. 2012) (emphasis added). Here, other than the Court *sua sponte* directing the Plaintiff to bolster its jurisdictional allegation in order for the Court to make the threshold subject matter jurisdiction determination (ECF No. 16), the court has not identified a deficiency in Plaintiff's pleading pertaining to a particular cause of action. This makes the instant matter substantially different from the only case cited by Defendant - *Mendez v. Prieto*, 2019 U.S. Dist. LEXIS 159144, at *2 (S.D. Fla. Sept. 16, 2019). In *Mendez*, where Judge Marcia G. Cooke dismissed a complaint with prejudice, the court had already previously "dismissed Plaintiff's claims against Defendant City of Miami Beach for failure to allege facts supporting municipal liability under section 1983." *Id*. at *3. The complaint was dismissed with prejudice because the plaintiff had already been given a chance to cure a specific pleading deficiency identified by the Court. *Id*. at *5 ("Because the Court has already given Plaintiff the chance to cure this deficiency, see ECF No. 19, and Plaintiff has failed to do so, Plaintiff's claims against Defendant City of Miami Beach will now be dismissed with prejudice."). Here, Plaintiff has not received any guidance from the Court as to any alleged deficiencies with respect to his causes of action. Accordingly, there is no basis for any claim in his SAC to be

dismissed with prejudice.

### IV. Plaintiff's Request for Punitive Damages is Viable.

A product manufacturer's actual knowledge of a danger followed by a failure to warn of that danger supports an award of punitive damages under Florida law. *Alfeo v. I-Flow*, LLC, No. 11-80837-CIV, 2012 U.S. Dist. LEXIS 16798, 2012 WL 442981, at *2 (S.D. Fla. Feb. 10, 2012) (citing *Holmes v. Bridgestone/Firestone, Inc.*, 891 So.2d 1188, 1191-92 (Fla. 4th DCA 2005)). Here, Plaintiff alleges that Defendant knew its da Vinci robot electrosurgical instruments were unsafe because they had a history of insulation failures which made them prone to the release of stray electricity, yet failed to warn of that danger. *See* SAC at ¶¶ 12-16. This factual basis plausibly shows that Defendant acted with "conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct" as required to support the recovery of punitive damages in Florida. *See* Fla. Stat. Section 768.72(2)(b) (defining conduct for which punitive damages may be awarded). Accordingly, Plaintiff's punitive damages prayer should remain in place.

### CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated: April 22, 2024

Respectfully submitted,

*/s/ John Scarola*
JOHN SCAROLA
FLORIDA BAR NO. 169440
**SEARCY DENNEY SCAROLA BARN-HART & SHIPLEY, PA**
2139 Palm Beach Lakes Blvd
West Palm Beach, FL 33409
561-686-6300 Telephone
561-383-9451 Fax
_scarolateam@searcylaw.com

        --and—

        Joseph Lipari (*pro hac vice*)
        **SULTZER & LIPARI, PLLC**
        85 Civic Center Plaza, Suite 200
        Poughkeepsie, NY 12601
        (845) 483-7100
        *Attorneys for Plaintiffs*