UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-80137-MIDDLEBROOKS

HARVEY SULTZER, *as representative of
the* ESTATE OF SANDRA SULTZER,

    Plaintiffs,

v.

INTUITIVE SURGICAL, INC.,

    Defendant.

_____/

**ORDER ON MOTION TO DISMISS**

THIS CAUSE comes before the Court upon the Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, filed April 8, 2024. (DE 28). Plaintiff responded in opposition to the Motion on April 22, 2024 (DE 32), and Defendant replied on April 26, 2024. (DE 33).

Plaintiff has filed a Second Amended Complaint against Defendant Intuitive Surgical, Inc. ("ISI"), alleging four counts: Negligence, Products Liability for Design Defect, Products Liability for Manufacturing Defect, and Products Liability for a Failure to Warn. (*See generally* DE 26). ISI's Motion seeks to dismiss all Counts asserted against it save two: negligence based on a theory of defective design and strict liability for design defect. For the following reasons, I will grant the Motion in part and dismiss Count IV of the Complaint. I also dismiss Count I in part. I will deny the Motion in all other respects.

## I.   FACTUAL BACKGROUND[1]

### A. Plaintiff's Injuries

Sandra Sultzer was diagnosed with colon cancer in June 2021. (DE 26 ¶ 2). On September 14, 2021, Mrs. Sultzer had surgery to treat her cancer at Baptist Health Boca Raton Regional Hospital. (*Id.* ¶ 11). Dr. Avraham Belizon performed the surgery using a multi-armed, remote-controlled, surgical device called a "da Vinci XI Surgical System" ("da Vinci robot"). (*Id.*). ISI designed, manufactured, tested, sold, promoted, and labeled the da Vinci robot.

Although Dr. Belizon removed the cancerous tumor during the operation, an "electrical spark" emitted by the da Vinci robot during the surgery resulted in a perforation to Mrs. Sultzer's small intestine, later requiring numerous medical procedures, including closing the perforation with fifteen sutures. (*Id.* ¶ 25). Mrs. Sultzer had to be transferred to a rehabilitation facility after the procedure. (*Id.*). Moreover, as a result of the thermal burn, Mrs. Sultzer had a feeding tube inserted. (*Id.*).

Five months later, Mrs. Sultzer died. (*Id.* ¶ 26). Until she passed away, Mrs. Sultzer was never able to eat solid foods again. (*Id.* ¶ 25). She continued to have abdominal pain and suffer severe physical and mental distress. (*Id.*). She additionally was confined to the hospital and/or rehabilitation facility for the majority of her final months, incurring the expenses of medical care, hospitalization, treatment, nursing care and treatment, and rehabilitative care and treatment. (*Id.* ¶ 26). Plaintiff alleges that Mrs. Sultzer's death was the result of the thermal injury caused by a defect in the insulation of the da Vinci robot. (*Id.* ¶ 28).

---

[1] Because this cause comes before the Court on a motion to dismiss, I accept all facts in the Plaintiff's well-pleaded complaint as true and construe them in the light most favorable to the Plaintiff. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).

### B. The da Vinci Robot

Literature available to ISI prior to Mrs. Sutzer's surgery showed that the insulation ISI used on the da Vinci robots' electrosurgical instruments insufficiently prevented electricity from leaking into the body. (*Id.* ¶ 15). For example, according to SEC filings, ISI has been a named defendant in "approximately 93 individual product liability lawsuits filed in various state and federal courts by plaintiffs who allege that they or a family member underwent surgical procedures that utilized the da Vinci Surgical System and sustained a variety of personal injuries." (*Id.* ¶ 12). Several of those cases have resulted in death. (*Id.*). ISI has also received thousands of injury and defect reports related to use of the da Vinci robot during surgery. (*Id.* ¶ 13). Such injuries are as severe as burns to internal organs caused by the discharge of a bolt of electricity when the robot's instruments are operating inside the patient. (*Id.*). These injury reports can all be found on the Food and Drug Administration's ("FDA's") MAUDE database, which is public and known to the medical community.[2] (*Id.*).

In reported instances of injuries, "the release of stray electricity, also known as 'arcing,'" causes the damage to the body. (*Id.* ¶ 17). Arcing has been associated with a specific instrument that the da Vinci robot utilizes called Hot Shears Monopolar Curved Scissors. (*Id.*). These scissors are used in all da Vinci surgeries, including Mrs. Sultzer's. Such arcing was the subject of a *Surgical Endoscopy* article in December of 2012 that reported a total of 156 "arcing" incidents—125 of which included instances involving the Monopolar Curved Scissors. (*Id.* ¶ 18). The article

---

[2] Plaintiff cites numerous other reports that detail the injuries sustained by patients during surgeries making use of the da Vinci robot: the journal *Urology*, the *American Journal of Obstetrics and Gynecology* (noting 80 percent of instruments suffered insulation failures after ten uses, and 32 percent of instruments suffered insulation failure before ten uses), and *the Journal of Endourology* (noting that electrosurgical injuries caused by sparking conditions "are likely to be both under-recognized and underreported"). (DE 26 ¶ 16).

3

noted that arcing occurrences are often underreported, so the number represented in the article "inherently underrepresent[ed] the true denominator of instrument errors." (*Id.*).

Plaintiff alleges that ISI failed to warn Mrs. Sultzer's healthcare providers, including her surgeon, about the known dangers associated with the da Vinci robot. (*Id.* ¶ 19). Specifically, ISI failed to warn the medical community about the danger of arcing associated with the Monopolar Curved Scissors because it systematically underreports the adverse events associated with the da Vinci robot to the FDA. (*Id.*). Accordingly, the MAUDE database does not contain a true representation of the injuries and deaths associated with the da Vinci robot. (*Id.* ¶ 19–21). According to Plaintiff, had the MAUDE database accurately reflected the risks of utilizing the da Vinci surgical system, Mrs. Sultzer's doctors would have provided an accurate risk analysis as part of the informed consent process prior to surgery. (*Id.* ¶ 22). And had Mrs. Sultzer known about the true risks of undergoing surgery aided by the da Vinci robot, she never would have consented to the procedure. (*Id.*).

## II. PROCEUDRAL BACKGROUND

Originally, two Plaintiffs filed a complaint in this matter on February 6, 2024: Harvey Sultzer asserted claims in his individual capacity against ISI, and Harvey Sultzer asserted claims on behalf of Sandra Sultzer as representative of her estate. (DE 1). After I sua sponte dismissed Plaintiffs' complaint for failure to adequately plead diversity jurisdiction (DE 16), the Plaintiffs refiled an Amended Complaint. (DE 17). In response to Defendant's Motion to Dismiss that Amended Complaint, Plaintiffs together filed a Second Amended Complaint. (DE 26). Defendant has yet again moved to dismiss the Second Amended Complaint. (DE 28).

### III. <u>LEGAL STANDARD</u>

I evaluate a 12(b)(6) motion to dismiss under the standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Eleventh Circuit has held that a district court may consider affirmative defenses when ruling on a pre-answer motion to dismiss under Rule 12(b). *See Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003) ("A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim.") (overruled on other grounds); *cf. Smith-Haynie v. D.C.,* 155 F.3d 575, 578 (D.C. Cir. 1998) (A court may consider an affirmative defense when "the facts that give rise to the defense are clear from the face of the complaint."); *Rodi v. S. New England Sch. Of L.*, 389 F.3d 5, 12 (1st Cir. 2004) ("[A] properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense.") Thus, even when construing all facts in favor of a plaintiff, if the four corners of a complaint make clear that the defendant would have an applicable affirmative defense, dismissal is appropriate.

### IV. <u>DISCUSSION</u>

Plaintiff[3] asserts four counts against ISI in the Second Amended Complaint. In support of dismissal, ISI puts forth three arguments as to why several of Plaintiff's claims fail to state a claim

---

[3] In Response to Defendant's Motion to Dismiss, Plaintiff dropped all claims asserted by Harvey Sultzer in his individual capacity. (DE 32 at 5 n.1). Accordingly, reference to the singular

5

upon which relief can be granted: First, Plaintiff's negligence and strict liability claims premised upon a theory of "failure to warn" the FDA are impliedly preempted by the Food, Drug, and Cosmetic Act ("FDCA"), which bars private enforcement of duties owed to the FDA. Further, any negligence or strict liability claim based on a "failure to warn" Mrs. Sultzer are barred by the learned intermediary doctrine. Second, Plaintiff's manufacturing defect claim (Count III) fails to allege any facts that suggest the Monopolar Curved Scissors deviated from design or manufacturing specifications. Third, and finally, any other theory as to ISI's negligence is inadequately pleaded, with the exception of the theory that Defendant negligently designed the da Vinci robot.[4] I analyze each argument in turn.

### A.   Overview

To address the tension between preemption, negligence, products liability, and the learned intermediary doctrine, a quick overview is needed. Florida law recognizes that a product may be defective by virtue of a design defect, a manufacturing defect, or an inadequate warning regarding a possible defect in the product. *See West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 90 (Fla. 1976). Florida law also permits a plaintiff to assert a negligence claim in conjunction with a products liability claim. *See Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1172 (Fla. 4th DCA 1998); *U.S. Mineral Products Co. v. Waters*, 610 So.2d 20, 22 (Fla. 3rd DCA 1992) ("When a set of facts will support both a theory of common law negligence and strict liability, a plaintiff is entitled to proceed on either theory or both.") (citation omitted). The difference between the two

---

"Plaintiff" throughout this Order refers exclusively to Harvey Sultzer in his representative capacity as administrator of the Estate of Sandra Sultzer.

[4] Plaintiff also asserted that Plaintiff impermissibly seeks attorneys' fees as a form of relief. Because Plaintiff withdrew such a claim for relief in his Response (DE 32 at 6 n.2), I need not address this argument.

causes of action in the case of a defective product lies in the elements that a plaintiff must prove: "[s]trict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence." *West*, 336 So.2d at 90.

Take the situation where a manufacturer of gizmos has taken all precautions that could reasonably be expected: it tested all parts of the gizmo before approving its use; it watched all of its employees with vigor as they assembled the gizmo; and it printed perfectly adequate labels, warning of the dangers associated with the gizmo, that it directed all of its employees to stick on each product. However, despite the manufacturer's best care, one of the manufacturer's employees removes the label, and this warning-less gizmo ends up at a gizmo retail store, where it is then purchased by a gizmo collector. Thereafter, the gizmo explodes, taking the collector down with it. In that situation, products liability is on the table, while negligence is probably not. And because the situation turned out to be that the gizmo did not contain a proper warning when it reached the hands of the gizmo collector, there is a strong likelihood that the manufacturer will be on the hook for "failure to warn" strict products liability.

If the gizmo turns out to be a medical device or drug, the learned intermediary doctrine is at play. This doctrine provides that in the context of the medical field, the manufacturer's duty runs "to the physician, rather than the patient." *Felix v. Hoffmann-LaRoche, Inc.,* 540 So. 2d 102, 104 (Fla. 1989). The impact of this doctrine is that so long as there is "an adequate warning given to those members of the medical community lawfully authorized to prescribe, dispense and administer drugs," then the manufacturer has fulfilled its duty. *See Buckner v. Allergan Pharm., Inc.,* 400 So. 2d 820, 822 (Fla. Dist. Ct. App. 1981). The rationale behind the doctrine is that patients would not have access to certain prescriptions or medical devices without the learned intermediary; in turn, the doctor "who has knowledge of the danger and whose position vis-à-vis

the manufacturer and consumer, confers a duty to convey the requisite warnings to the consumer." *Aubin v. Union Carbide Corp.*, 177 So.3d 489, 514 (Fla. 2015) (quoting *Union Carbide Corp. v. Kavanaugh*, 879 So.2d 42, 44–45 (Fla. 4th DCA 2004)). The gizmo collector, therefore, could not sue the gizmo manufacturer for breaching its duty to warn the collector, as that duty only runs to the gizmo retailer.

### B.     *Count IV – Products Liability (Failure to Warn)*

Considering that overview, I begin with Plaintiff's Failure to Warn claim, and I dismiss it outright.

In the case at hand, ISI argues—and Plaintiff disputes—that the Court should dismiss Count IV of the Complaint (strict products liability for failure to warn). In support, ISI contends that a claim of products liability based on a failure to warn Plaintiff's doctor is preempted by the FDCA, and a claim of a failure to warn Plaintiff is barred by the learned intermediary doctrine. Although both are affirmative defenses, ISI argues that the Court can dispose of Plaintiff's claims in light of their applicability when considering the four corners of the Second Amended Complaint. Plaintiff counters that ISI misconstrues his claims; his state-law claim of strict liability is based on a duty Defendant owed to Mrs. Sultzer's healthcare providers, not the FDA nor him, and relies on more than just reporting requirements to FDA's MAUDE database. According to Plaintiff, because the Second Amended Complaint states that Defendant "affirmatively misrepresented to the FDA and to the medical community, including plaintiff's doctor, the unique risks associated with the da Vinci XI Surgical System" by "underreporting the frequency of injuries and deaths associated with the da Vinci robots," Plaintiff's failure to warn claim survives because it is neither preempted nor barred.

I agree with Plaintiff that he explicitly alleges ISI failed to warn both Plaintiff and Plaintiff's surgeon, as part of the general medical community, of the dangers of the da Vinci robot. And, in many respects, Plaintiff is correct; he has alleged facts—such as ISI's severe underreporting of known instances of adverse arcing—that if proved, would surely demonstrate Defendant breached its "strict duty to warn of [the da Vinci robot's] dangerous propensities." *Brito v. Cnty. of Palm Beach,* 753 So. 2d 109, 112 (Fla. Dist. Ct. App. 1998). A jury could certainly conclude that underreporting adverse events to the FDA's database, which doctors rely on when evaluating and subsequently conveying the dangers to their patients, insufficiently "apprises a user of the serious risk of injury or death resulting from [the product]." *Brown v. Glade & Grove Supply, Inc.*, 647 So. 2d 1033, 1036 (Fla. Dist. Ct. App. 1994). Although this might plead around the learned intermediary doctrine, *see Aubin*, 177 So.2d at 518 (upholding a jury instruction that a bulk supplier of asbestos "ha[s] a duty to warn end users of an unreasonable danger in the contemplated use of its products"), this is where Defendant's preemption argument finds teeth.

Section 337(a) of the FDCA requires that "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] *shall be by and in the name of the United States.*" (emphasis added). This statutory carveout prevents nongovernment litigants from seeking "to privately enforce a duty that is owed to the FDA." *Jacob v. Mentor Worldwide, LLC,* 40 F.4th 1329, 1336 (11th Cir. 2022). However, this provision only prevents "fraud-on-the-agency claims" as opposed to preventing "certain state-law causes of action that parallel federal safety requirements." *Buckman Co. v. Plaintiffs' Legal Committee*, 531 US. 341, 353 (2001). Accordingly, the Eleventh Circuit has held that "traditional state-law tort claims survive implied preemption so long as they don't seek to privately enforce a duty owed to the FDA." *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1327 (11th Cir. 2017).

9

In this respect, Count IV of Plaintiff's Second Amended Complaint is preempted on its face by the FDCA. To be sure, Plaintiff contends that his failure to warn claim does not solely rely on underreporting to the FDA (DE 32 at 13). But the Second Amended Complaint does not include a single other way under Count IV that ISI "affirmatively misrepresented" the dangers associated with the da Vinci robot to the medical community *other than* by failing to accurately disclose the adverse events to the FDA as required by federal law. (*See* (DE 26 ¶ 31) ("If ISI had communicated adverse events to the FDA as required by federal law, doing so would have effectively warned Mrs. Sultzer's surgeon of the risks associated with da Vinci Vi Surgical System.")). Although this failure to adequately report to the FDA appears to be one fact that Plaintiff points at in an effort to establish a broader claim of failure to warn Plaintiff's doctor of the risks of the robot, I cannot rewrite Plaintiff's pleadings for him. As they stand now, the strict liability failure to warn allegation does not articulate any other way that ISI failed to provide adequate warnings.

I acknowledge—and will analyze below—that some allegations within the Complaint might support a claim of failure to warn liability that jumps both the learned intermediary and the preemption hurdles because they demonstrate the warning to Mrs. Sultzer's doctor was inadequate beyond mere noncompliance with ISI's statutory duty. However, Plaintiff did not structure the Complaint in a way that makes clear that those allegations relate to this particular Count. I decline to cherry-pick various parts of Plaintiff's Complaint and create a patchwork result that survives this Motion to Dismiss. Plaintiff's responsibility, as master of his Second Amended Complaint, is to demonstrate the grounds "upon which *each* claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (emphasis added). Accordingly, I must dismiss Count IV as preempted by the FDCA.

### C.     Count III - Products Liability (Manufacturing Defect)

Next, I deny Defendant's Motion with respect to Count III.

ISI argues that any manufacturing defect claim (Count III) fails because Plaintiff does not allege any facts to suggest that the Monopolar Curved Scissors deviated from design or manufacturing specifications. Plaintiff, of course, argues that any pleading standard under this theory has been met; under binding Eleventh Circuit precedent, he need not identify the exact way that Defendant deviated from the intended, safe design to state a claim for a manufacturing defect. I agree with Plaintiff, and I decline to dismiss Count III of the Second Amended Complaint.

The Eleventh Circuit has held that for a plaintiff to adequately plead a manufacturing defect claim, he "need not state in his complaint the precise defect that caused [the product] to malfunction." *Godelia v. Doe 1*, 881 F.3d 1309, 1318 (11th Cir. 2018). Rather, a plaintiff must only allege three elements: (1) a relationship between the defendant and the product; (2) a defect that caused the product to be unreasonably dangerous; and (3) a proximate, causal connection between the defect and the harm suffered by the plaintiff. *See Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999) (citing *West*, 336 So.2d at 87); *Cintron v. Osmose Wood Preserving, Inc.*, 681 So. 2d 859, 861 (Fla. Dist. Ct. App. 1996). And although the case does not bind my decision today, the unpublished decision of *Bailey v. Janssen Pharmaceutica, Inc.,* 288 F. App'x 597, 605–06 (11th Cir. 2008), articulates the rationale behind the Eleventh Circuit's liberal pleading requirement in this regard:

> In short, appellant identified the source of the defect: a leak in the protective lining and functional layers, which caused the product to dispense its medication at a dangerous and lethal rate. Whether this leak was the result of a manufacturing error along the assembly line or because of a faulty design in the patch itself would be difficult for a consumer to know prior to discovery. But these allegations are sufficient to allow defendants to frame a responsive pleading directed at a defect in either the design or manufacturing of the

11

        patch's layers that caused a leak resulting in the delivery of a fatal dose of fentanyl.

Just like the plaintiff in *Bailey*, Plaintiff here has identified that the Monopolar Curved Scissors emitted an electrical spark as the result of a discharge of electrical current, a phenomenon known as arcing, in light of insulation problems. *Compare id.*, *with* (DE 11 ¶¶ 15–22). Such grounds are sufficient to place the Defendant on notice to frame a responsive pleading.

        ISI tries to dispute that *Bailey* relies on Florida substantive law that has since been revised: the Florida Supreme Court approved a change to the Standard Jury Instructions that distinguishes between manufacturing and design defects, delineating the elements of both claims. *See In re Std. Jury Instr. In Civ. Cases—Report No. 13-01 (Prod. Liab.)*, 160 So.3d 869, 873–74, 880 (Fla. 2015). Further, ISI argues that *Bailey* was incorrect on all fronts; the decision allows a litigant to jump through procedural hurdles by admitting that he does not know an essential element of the claim and rely on discovery to fill in those pleading holes for him. (DE 33 at 7). ISI argues that the Eleventh Circuit has held that Plaintiff's own admission regarding his lack of knowledge as to where ISI *specifically* deviated in the manufacturing process reinforces that the Second Amended Complaint must be dismissed. (*See* DE 33 at 7 (citing *Franklin v. Curry*, 738 F.3d 1246, 1252 n.6 (11th Cir. 2013))).

        Defendant conflates Florida substantive law requirements as to strict liability and the federal pleading standards. *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (Federal courts sitting in diversity apply federal pleading standards). Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has invoked a plausibility requirement of this rule, preventing plaintiffs from "unlock[ing] the doors of discovery . . . armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. But if a complaint

contains more than mere conclusory allegations, then on a motion to dismiss, I favor the plaintiff with all reasonable inferences from the allegations in the complaint. *See Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

Here, although Plaintiff might have to *prove at trial* that Defendant deviated from the intended design of the Monopolar Curved Scissors or the da Vinci robot to recover for the defective manufacture of a product, *see Lesnik v. Duval Ford*, LLC, 185 So. 3d 577, 581 (Fla. Dist. Ct. App. 2016) (granting summary judgment to the defendant because there was no evidence in the record that the product was "defective or improperly installed"), he need not demonstrate that now. At this point, Plaintiff has sufficiently alleged that Defendant manufactured the da Vinci robot, defects in the installation caused the robot to be unreasonably dangerous by emitting electrical sparks that caused thermal burns, and that an electrical spark caused a perforation to Plaintiff's small intestine, leading to her death. I can infer from the alleged facts that the arcing difficulty, which Plaintiff states was caused from poor installation of the Monopolar Scissors, was either the result of "an instance of shoddy workmanship" or from an intended design defect "occurring throughout an entire line of products." *See Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989).

I also note that Defendant's reliance on *Franklin v. Curry* is inapposite. In that case, the Eleventh Circuit declined to excuse a plaintiff's "lack of specificity [when the plaintiff] admit[ted] that she simply d[id] not know the details" of parts of her claim. *Franklin*, 738 F.3d at 1252 n.6. The *Franklin* plaintiff asserted a claim under 42 U.S.C. § 1983, alleging that certain supervisory defendants were deliberately indifferent to the sexual assault of plaintiff that occurred when she was a pretrial detainee. *Id.* at 1249. The per curiam opinion found that the plaintiff's claims were wholly conclusory; although she stated that the supervisory defendants "failed to promulgate . . .

policies . . . to safeguard female inmates," she did not describe a single policy that was or should have been in place. *Id.* at 1252. She also was completely incapable of describing the relationship between the supervisor defendants and the defendant that committed the sexual assault. *Id.* In stark contrast to the allegations of that complaint, Plaintiff here goes beyond repeating the mere elements of the cause of action and identifies the precise defect that caused the product to be unreasonably dangerous, as well as Defendant's role in producing the product. Accordingly, he has plausibly pleaded a path to recovery for a manufacturing defect, or an instance of "shoddy workmanship." Thus, I will deny the Motion to Dismiss Count III of Plaintiff's Complaint.

### D.    *Count I - Negligence*

Finally, I consider Plaintiff's Negligence claim, and I dismiss it in part.

ISI argues that Plaintiff's negligence claim—which relies in part on ISI's negligent manufacture and negligent failure to warn—should be dismissed for the same reasons as his strict liability claims: they are either preempted by the FDCA or barred by the learned intermediary doctrine. And further, according to ISI, all other grounds Plaintiff relies on to establish ISI's negligence are not independent grounds for recovery (other than for negligent design of the da Vinci robot). Plaintiff fails to address the latter half of this argument,[5] but he responds that the

---

[5] In Reply, ISI argues that the Court should consider Plaintiff to have abandoned his theories of negligence regarding ISI's intra-operative surveillance, post-operative complication studies, and provision of training and information due to Plaintiff's failure to respond to ISI's arguments. (DE 33 at 1 n.1). In support, Defendant cites my decision in *Singletary v. Cano*, 2021 WL 11705681, at *1 (S.D. Fla. Sept. 17, 2021). Although it is true that a court may consider an argument abandoned for failure to brief a legal issue, *see Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000), the decision is ultimately one that lies with the discretion of the court. Although it is true that Plaintiff does not directly brief this part of the Motion, I find that Plaintiff's Response adequately addresses all arguments raised by ISI in its Motion to Dismiss at various points throughout his Response, including the issues of the learned intermediary doctrine, preemption, and the 12(b)(6) pleading standard such that the Court can address these arguments without acting as Plaintiff's de facto counsel.

negligence claim should not be dismissed for the same reasons that the strict liability claims should survive. I disagree with ISI except to the extent that Plaintiff cannot rely on the failure to report to the FDA to establish ISI's negligence.

From the outset, to avoid having a state-law tort claim preempted, "a plaintiff must carefully plead a claim that implicates the safety or effectiveness of a federally-regulated medical device." *Mink*, 860 F.3d at 1327. "To make it through, . . . a plaintiff cannot sue *only* because the conduct violated that federal requirement." *Id.* Plaintiff does not appear to rest his negligence claim *only* on violations of the duty that ISI owes to the FDA; he not only states that ISI was negligent when it designed, manufactured, and failed to warn doctors regarding the da Vinci robot, but also ISI was negligent when it failed "to conduct adequate intra-operative surveillance and post-operative complication studies to determine the safety of the use of monopolar energy as it relates to the da Vinci Xi Surgical System" and failed "to provide adequate training and information to healthcare providers for the appropriate use of the da Vinci Xi Surgical System." (DE 26 ¶ 37(d)–(e)). Accordingly, like the Court in *Mink*, I will evaluate each of the asserted grounds for recovery individually.

I start with the theories of recovery that are plausible. ISI has not disputed that Plaintiff has pleaded a theory of negligent design, and I therefore do not consider it ripe for dismissal. I also decline to dismiss Plaintiff's negligent manufacturing theory. Florida law recognizes that manufacturers have a duty "in the design and manufacture of [their] product to eliminate any unreasonable risk of foreseeable injury." *Ford Motor Co. v. Evancho*, 327 So.2d 201, 204 (Fla. 1976). Because, for all the reasons stated above, Plaintiff has sufficiently alleged that ISI failed to manufacture the da Vinci Monopolar Scissors in a way that was "reasonably fit for its intended use and free of hidden defects that could render it unsafe," *see id.* at 204 (quoting *Larsen v. Gen.*

15

*Motors Corp.*, 391 F.2d 495, 501 (8th Cir. 1968)), I will allow Plaintiff to proceed with these theories as pleaded.

Additionally, I decline to dismiss Plaintiff's claims for negligent failure to warn Plaintiff's surgeon. Florida law imposes a duty on a manufacturer of medical devices to use reasonable care when it "knowingly place[s] a dangerous product on the market, the dangerous condition of which is unnoticeable." *Aubin*, 177 So.3d at 514. Florida law dispenses any duty that has been placed on the manufacturer once it warns a "learned intermediary" about the dangers associated with a product. *See id.* But the learned intermediary doctrine would only bar Plaintiff's claims for negligent failure to warn when "the warning provided to the physician [wa]s adequate." *Rounds v. Genzyme Corp.*, 440 Fed.Appx. 753, 755 (11th Cir. 2011). Whether a warning to the physician was "adequate" depends on a variety of factors: the "intermediary's level of education, knowledge, expertise, and relationship with the end users," as well as whether the manufacturer itself adequately conveyed the danger considering "the gravity of the risks posed by the product, the likelihood that the intermediary will convey the information to the ultimate user, and the feasibility and effectiveness of giving a warning directly to the user." *See Aubin*, 177 So.3d at 514–15 (quoting Restatement (Third) of Torts: Prod. Liab. § 2 cmt. i (1998)). Under Florida law, "the adequacy of warnings can become a question of law [only] where the warning is accurate, clear, and unambiguous." *see Felix*, 540 So.2d at 105.

In this instance, assuming the truth of Plaintiff's allegations, the Second Amended Complaint demonstrates that such a warning to Mrs. Sultzer's physician was anything *but* unambiguous and clear, and Plaintiff can use such instances—like the failure to conduct adequate intra-operative studies and post-operative complication studies, along with the failure to provide adequate training and information to healthcare providers—as part of a mosaic of circumstantial

evidence to prove ISI breached its duty of reasonable care. Accordingly, Plaintiff's negligent failure to warn claim is not barred by the learned intermediary doctrine, and I find that Plaintiff plausibly pleads a basis for relief under this Count at this stage of the proceedings.

In contrast to my above findings and consistent with my finding on the Strict Products Liability Failure to Warn claim, I will not allow Plaintiff's failure to warn to proceed on a theory of underreporting adverse events to the FDA. Using such a failure to establish the state-law tort of negligence is impliedly preempted by the FDA, and Plaintiff cannot rely on ISI's failure to accurately report adverse instances to establish ISI's negligence. *See Mink*, 860 F.3d at 1329–30.

## V.     CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

1) Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (DE 28) is **GRANTED IN PART**.

2) Count I is **DISMISSED WITHOUT PREJUDICE IN PART**. Plaintiff's negligence claim may proceed under all of the theories alleged with the exception of a failure to report to the FDA.

3) Count IV is **DISMISSED WITHOUT PREJUDICE.** Plaintiff may not assert a strict liability claim as to ISI's failure to warn Mrs. Sultzer's doctor.

4) All other claims may proceed as pleaded.

5) From the record before me, I am unable to determine if amendment would be futile. Therefore, I will grant leave to amend.[6] Accordingly, should Plaintiff wish to file a Third Amended Complaint *as to Count I and IV only*, he must file it by **July 18, 2024.**

---

[6] I note that Plaintiff appears to have requested leave to amend. (DE 32 at 14) ("Here, Plaintiff has not received any guidance from the Court as to any alleged deficiencies with respect to his causes of action. Accordingly, there is no basis for any claim in his SAC to be dismissed with prejudice.").

6) If Plaintiff does not file a Third Amended Complaint, then the Second Amended Complaint shall continue to be the operative complaint, as modified by this Order.

**SIGNED** in Chambers in West Palm Beach, Florida, this 11th day of July, 2024.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

Therefore, I will dismiss this Second Amended Complaint without prejudice because I have not yet provided an opportunity for Plaintiff to substantively amend his allegations.